UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LENNARD COLEMAN,

    Plaintiff,

    v.                              CAUSE NO. 3:21-CV-958-DRL

L. IVERS *et al.*,

    Defendants.

## OPINION AND ORDER

Lennard Coleman, a prisoner without a lawyer, is proceeding in this case against Health Care Administrator Lee Ivers, Dr. Carl Kuenzli, and Nurse Kim Myers "in their individual capacities for compensatory and punitive damages for their failure to fulfill Dr. Shah's requests for lab tests and test results beginning in August of 2019, in violation of the Eighth Amendment[.]" ECF 13 at 4-5. The defendants filed a motion for summary judgment. ECF 76. Mr. Coleman filed a response, and the defendants filed a reply. ECF 81, 82, 87, 89. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278,

282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When the defendants have provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

The defendants argue they are entitled to summary judgment because the medical records show the medical staff at Miami Correctional Facility (MCF) completed and forwarded all of Dr. Shah's requests for lab work. ECF 77 at 10-11. Specifically, the defendants argue "Dr. Shah's records do not state that he was requesting Mr. Coleman's missing lab results," and "[n]owhere in the records does it state that MCF had failed to fax or forward Mr. Coleman's lab results to Dr. Shah's office." *Id.* at 11. Mr. Coleman responds that Dr. Shah's medical records contain numerous requests for lab results that went unanswered by the prison. ECF 81.

Here, Dr. Shah's records do indicate he made numerous requests for lab results, tests, and consultations that went unanswered by the prison. Specifically, Dr. Shah's records show he requested various labs including ANA, lupus anticoagulant, and anti-phospholipid as early as October 2019, resubmitted a lab sheet to the prison requesting these labs approximately every month, and did not receive any results until June 2020, when only some of the labs he requested were adequately completed. *See* ECF 77-1 at 151-53; ECF 77-2 at 79-80, 112-13; ECF 81-4 at 10, 14, 19, 23, 27, 29-32.[1] Though the defendants

---

[1] Specifically, the medical records show: (1) on October 3, 2019, Dr. Shah recommended the prison perform a vasculitis work-up before Mr. Coleman's next visit, as ANA, lupus anticoagulant, and anti-phospholipid labs had not been performed (ECF 81-4 at 31); (2) on November 5, 2019, Dr. Shah again noted these labs had not been performed and sent a lab-order form to the prison with Mr. Coleman's discharge note (ECF 77-2 at 112-13; ECF 81-4 at 27); (3) on January 7, 2020, Dr. Shah again noted these labs had not been performed and resubmitted the lab-order form to the prison (ECF 77-2 at 79-80; ECF 81-4 at 23); (4) on March 12, 2020, Dr. Shah again noted these labs had not been performed and resubmitted the lab-order form to the prison (ECF 81-4 at 19); (5) on May 26, 2020, Dr. Shah again noted these labs had not been performed and resubmitted the lab-order form to the prison (ECF 77-1 at 151-53; ECF 81-4 at 14); and (6) on July 28, 2020, Dr. Shah noted some lab results had been faxed over by the prison on June 17, but only some of the labs were adequately completed (ECF 81-4 at 10).

provide evidence the prison performed some lab testing on Mr. Coleman in September 2019 and forwarded the results to Dr. Shah, Dr. Shah's records indicate the prison did not timely send him the results of the tests he requested in October 2019 despite his numerous requests. *See id.* Additionally, Dr. Shah's records show he began requesting that Mr. Coleman receive an MRI, neurology consultation, and rheumatology consultation as early as March 2020, and had not received any records from these consultations as of February 2021 despite making numerous requests for these records. *See* ECF 81-3 at 60, 64-65; ECF 81-4 at 6, 10, 14, 19.[2] The defendants provide evidence that the prison referred Mr. Coleman for an MRI, neurology consultation, and rheumatology consultation in response to Dr. Shah's recommendations, but Dr. Shah's records indicate the prison never forwarded him the results of these consultations despite his numerous requests. *See id.* The defendants do not argue or provide any evidence they did not receive Dr. Shah's requests for Mr. Coleman's lab work and consultation records, and a reasonable jury could conclude they received but did not respond to Dr. Shah's requests. Based on this

---

[2] Specifically, the medical records show: (1) on March 12, 2020, Dr. Shah recommended Mr. Coleman have a neurology consultation and MRI (ECF 81-4 at 19); (2) on May 26, 2020, Dr. Shah again recommended Mr. Coleman have a neurology consultation and MRI (ECF 81-4 at 14); (3) on July 28, 2020, Dr. Shah again recommended Mr. Coleman have a neurology consultation and MRI, and stated in all caps that he had not received any report that these tests had been completed (ECF 81-4 at 10); (4) on September 8, 2020, Dr. Shah recommended Mr. Coleman receive a rheumatology consultation and noted he still had not received any report of a neurology consultation or MRI (ECF 81-4 at 6); (5) on December 31, 2020, Dr. Shah sent a letter to MCF's medical staff stating he still had not received any records of Coleman's lab results, neurology consultation, MRI, or rheumatology consultation despite his requests (ECF 81-3 at 60); and (6) on February 9, 2021, Dr. Shah noted he still had not received any records from Mr. Coleman's neurology consultation, rheumatology consultation, or MRI, and concluded, "[a]t this point, this is a complex patient case that is becoming difficult to manage given the lack of communication back from prison and the need for further investigation by other specialties" (ECF 81-3 at 64-65).

evidence, a reasonable jury could conclude the defendants fell short of accepted professional practices by not adequately fulfilling Dr. Shah's requests for lab work, consultations, and testing—not least the results from these.

Each defendant also argues they were not personally responsible for any failure to provide lab results to Dr. Shah. Specifically, Dr. Kuenzli attests that Mr. Coleman had all lab work completed as requested by Dr. Shah, he did not knowingly prevent Dr. Shah's office from receiving Mr. Coleman's lab results, and he was never informed by Dr. Shah's office that they had not received the lab results. ECF 77-3 at 20-21. But it is undisputed that Dr. Kuenzli regularly saw Mr. Coleman for chronic care visits related to his hypertension and discussed his visits with Dr. Shah, and a reasonable jury could conclude that Dr. Kuenzli reviewed or should have reviewed Dr. Shah's records in which he repeatedly requested these documents. Additionally, MCF's medical records contain Dr. Shah's discharge notes, in which he repeatedly requested that Mr. Coleman's lab results be forwarded to his office and resubmitted copies of the lab-order sheet. *See* ECF 77-1 at 151-53; ECF 77-2 at 79-80, 112-13. Moreover, Mr. Coleman argues he told Dr. Kuenzli several times that Dr. Shah had not received his lab results (ECF 82 at 15-16), and Dr. Kuenzli admits Mr. Coleman "had relayed to me that Dr. Shah had not received his lab results" (ECF 77-3 at 20). It is therefore undisputed Dr. Kuenzli was notified Dr. Shah had not received the requested lab results, and Dr. Kuenzli provides no evidence regarding what efforts he made to ensure the results were provided to Dr. Shah.[3] Based

---

[3] Mr. Coleman does allege that, during one chronic care visit, Dr. Kuenzli questioned Nurse Myers about the status of his lab results. ECF 82 at 17. But it is unclear when this conversation

5

on this evidence, a reasonable jury could conclude Dr. Kuenzli fell short of accepted professional practices by making inadequate efforts to ensure Dr. Shah received Mr. Coleman's lab results despite knowing the results had not been received.

Nurse Myers attests she was not deliberately indifferent because she did not knowingly prevent Dr. Shah's office from receiving Mr. Coleman's lab results, did not refuse to submit the lab results, and was never informed that Dr. Shah had not received the lab results. ECF 77-8 at 21. However, Health Services Administrator (HSA) Lee Ivers attests it is the duty of "nursing staff" to ensure labs are drawn and the results are sent out. ECF 77-13 at 19. It is undisputed Dr. Shah repeatedly requested Mr. Coleman's lab results in his discharge notes, and a reasonable jury could conclude it was Nurse Myers' duty to provide Dr. Shah those results. Additionally, Mr. Coleman argues that Nurse Myers handled the requests for medical records, failed to ensure the results were faxed to Dr. Shah even after she was asked by Dr. Kuenzli during a chronic care visit about the status of the lab results, and stated on one occasion that she was "tired of hearing about Coleman's lab results." ECF 82 at 16-18. Nurse Myers provides no evidence she made any effort to provide Mr. Coleman's lab results to Dr. Shah. Based on this evidence, a reasonable jury could conclude Nurse Myers fell short of accepted professional practices by failing to make any effort to provide Mr. Coleman's lab results to Dr. Shah.

HSA Ivers attests she was not deliberately indifferent because it was not within her job duties to send Mr. Coleman's lab results to Dr. Shah's office, as those duties fell

---

took place, how Nurse Myers responded, or whether Dr. Kuenzli took any follow-up actions to ensure Mr. Coleman's lab results were sent to Dr. Shah.

to nursing staff and the "administrative assistant." ECF 77-13 at 19. Mr. Coleman responds that HSA Ivers was deliberately indifferent because he submitted a grievance complaining his lab results had not been sent to Dr. Shah and HSA Ivers handled the grievance, responded that the lab results would be sent to Dr. Shah, but did not carry through on sending the records. ECF 82 at 19-21; ECF 81-2 at 14. However, "prison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017); *see also Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (rejecting the plaintiff's argument that a grievance examiner could be held liable for failing to remedy the conduct complained of in the grievance, as "no prisoner is entitled to insist that one employee do another's job."). Because Mr. Coleman provides no evidence that HSA Ivers had any personal involvement in this case other than responding to his grievance, there is no evidence by which a reasonable jury could conclude that HSA Ivers was personally responsible for violating Mr. Coleman's Eighth Amendment rights. Summary judgment is warranted in her favor.

Last, all defendants argue they are entitled to qualified immunity because "[a]t no time did any of these Defendants render medical care that was so clearly a violation of the Plaintiff's constitutional rights that any Defendant would realize he or she was providing medical care tantamount to cruel and unusual punishment." ECF 77 at 22. Under the law, "qualified immunity does not apply to private medical personnel in prisons." *Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016); *see also Rasho v. Elyea*, 856 F.3d 469, 479 (7th Cir. 2017) ("This Court has construed the Supreme Court's holding that

7

employees of privately-operated prisons may not assert a qualified-immunity defense also to deny that defense to employees of private corporations that contract with the state to provide medical care for prisoners."). Thus, the defendants cannot avoid trial on grounds of qualified immunity.

Accordingly, there is sufficient evidence in the record by which a reasonable jury could conclude Dr. Kuenzli and Nurse Myers were deliberately indifferent to Mr. Coleman's serious medical needs by failing to fulfill Dr. Shah's repeated requests for labs, testing, and consultations to facilitate treatment of his right eye, despite having notice of Dr. Shah's requests.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 76) as to Lennard Coleman's claim against Health Services Administrator Lee Ivers, but DENIES it in all other respects; and

(2) REMINDS the parties this case is now proceeding only on Lennard Coleman's remaining claim against Dr. Carl Kuenzli and Nurse Kim Myers in their individual capacities for compensatory and punitive damages for their failure to fulfill Dr. Shah's requests for lab tests and test results beginning in August 2019, in violation of the Eighth Amendment.

SO ORDERED.

September 11, 2023                              *s/ Damon R. Leichty*
                                                              Judge, United States District Court